# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GEORGIA NUT COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 3018 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| C.H. ROBINSON COMPANY d/b/a Robinson ) | |
| Fresh, and ALL INTERSTATE TRUCKING ) | |
| LLC, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Georgia Nut Company ("Georgia Nut") brings this action against Defendants' C.H. Robinson Company ("C.H. Robinson") and All Interstate Trucking ("AI Trucking"), for their failure to deliver 42,000 pounds of almonds. Georgia Nut brings claims for negligent hiring and negligent supervision against C.H. Robinson (Count I), C.H. Robinson's negligent performance in its voluntary undertaking of submitting a claim to the insurer (Count II), and a Carmack Amendment violation against AI Trucking (Count III). Defendant C.H. Robinson moves to dismiss Count I and Count II arguing that both Counts are preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501, because they seek relief under state laws that have an effect on the prices, routes, or services of freight brokers covered by the FAAAA. Because the hiring and supervision of a shipping company is within the definition of transportation services covered by the FAAAA and enforcement of the state-law negligence claims relating to these services would have a significant effect on these services, the FAAAA preempts state-law negligent hiring and negligent supervision claims, and the Court grants the motion to dismiss Count I. But because C.H. Robinson has failed to show that the

submission of the insurance claims relates to transportation services, the Court denies the motion to dismiss Count II.

## BACKGROUND[1]

Georgia Nut hired freight broker C.H. Robinson, who hired motor carrier AI Trucking, to deliver 42,000 pounds of almonds from Livingston, California to Niles, Illinois. While no written contract existed between Georgia Nut and C.H. Robinson, the freight broker agreed to arrange the shipment of almonds for payment. Georgia Nut directed C.H. Robinson to ship the almonds directly from Livingston, California to Niles, Illinois without any detours during the route.

On Friday, June 17, 2016, AI Trucking took possession of the almonds from the Del Rio Nut facility. Upon pick up, Georgia Nut paid Del Rio Nut Company $162,960 for the almonds. After the truck was loaded, someone from Del Rio Nut placed an industry-standard, tamper-proof band with a unique load-identifying seal number that matched the sale number on the bill of lading on the cargo door. Between June 17 and June 21, 2016, AI Trucking routed the shipment of almonds through the state of Georgia on its way from Livingston, California to Niles, Illinois. AI Trucking failed to adhere to Georgia Nut's directive by shipping the almonds through the state of Georgia on its way to Illinois, rather than going directly from California to Illinois.

On Tuesday June 21, 2016, AI Trucking delivered the shipment of almonds to Georgia Nut's facility in Niles, Illinois. Upon delivery of the almonds in Niles, Illinois, Georgia Nut discovered that the band seal number on the cargo door did not match the unique load-identifying seal number for the bill of lading. Because band tampering renders the almonds

---
[1] The facts in the background section are taken from Plaintiff's First Amended Complaint and are presumed true for the purpose of resolving the motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir.2011).

unusable for human consumption, Georgia Nut rejected the shipment upon delivery and did not receive any reimbursement for the total loss from the almonds.

On July 6, 2016, Georgia Nut provided a Standard Form for Presentation of Loss and Damages Claims to C.H. Robinson, who then submitted a claim to the insurer. C.H. Robinson required Georgia Nut to use C.H. Robinson to handle all aspects of the process of making a claim with the insurer. Until February 2017, C.H. Robinson disclosed no information about the insurance claim to Georgia Nut, at which point C.H. Robinson solely revealed the identity of the insurer.

AI Trucking was established in July of 2015 and was administratively dissolved on December 7, 2016. Public Federal Motor Carrier Safety Administration (FMCSA) records show that AI Trucking had one driver and drove one mile in 2015.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

**I.    Preemption Under the Federal Aviation Administration Authorization Act (FAAAA)**

C.H. Robinson argues that the claims in Count I and Count II relate to the services C.H. Robinson provides as a broker, and therefore the FAAAA expressly preempts Georgia Nut's negligent hiring and negligent supervision claim and its claim of C.H. Robinson's negligence in its submitting a claim to the insurer .

The FAAAA express preemption clause states, in relevant part:

> [A] State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . or any private motor carrier, broker or freight forwarder with respect to the transportation of property.

49 U.S.C. § 14501(c)(1).[2] "The FAAAA's preemption clause prohibits enforcement of state laws 'related to a price, route, or service of any" broker "with respect to the transportation of property.'" *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260, 133 S. Ct. 1769, 185 L. Ed. 2d 909 (2013) (quoting 49 U.S.C. § 14501(c)(1)). Transportation is defined in Title 49 "as 'services related to th[e] movement' of property, 'including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.'" *Id.* at 261 (quoting 49 U.S.C. § 13102(23)(B)).

In determining whether a state law claim is subject to FAAAA preemption, the Seventh Circuit stated that two requirements must be met: "First, a state must have enacted or attempted to enforce a law. Second, that law must relate to carrier rates, routes, or services 'either by

---

[2] The FAAAA's preemption language is borrowed from the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713. *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 370, 128 S. Ct. 989, 169 L. Ed. 2d 933 (2008). Courts have generally incorporated judicial interpretations of the ADA's functionally identical preemption provision into their analysis of the FAAAA preemption provision. *Id.*

expressly referring to them, or by having a significant economic effect on them.'" *Nationwide Freight Sys., Inc. v. Ill. Commerce Comm'n*, 784 F.3d 367, 373–74 (7th Cir. 2015) (quoting *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1432 (7th Cir. 1996)). Preemption under the FAAAA is broad, and includes "laws and actions having some type of connection with or reference to a carrier's rates, routes, or services, whether direct or indirect." *Id.* at 373. But state laws are "not preempted where [their] relationship with carrier rates, routes, or services is 'tenuous, remote, or peripheral.'" *Id.* quoting *Dan's City Used Cars*, 569 U.S. at 261. Finally, "federal preemption is an affirmative defense upon which the defendants bear the burden of proof." *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005).

### A. Negligent Supervision and Negligent Hiring

Georgia Nut alleges that C.H. Robinson failed to hire a legitimate transportation company to carry a shipment of 42,000 pounds of almonds from Livingston, California directly to Niles, Illinois, breaching its duty of reasonable care. C.H. Robinson argues that the FAAAA preempts this claim because it relates to C.H. Robinson's services as a freight broker because it attempts to regulate C.H. Robinson's transportation services. Georgia Nut argues that FAAAA preemption does not apply to this claim because the effect on prices, routes, or services is too tenuous to invoke FAAAA preemption, and because the claim is similar to a breach of contract claim in that it is based on C.H. Robinson's "self-imposed undertakings." Doc. 19 at 3.

State common-law negligence claims satisfy the first requirement for preemption under the FAAAA. *See United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 607 (7th Cir. 2000) (holding that state common law satisfies the first requirement in ADA preemption cases). Therefore, this case turns on whether C.H. Robinson's alleged negligent supervision and

negligent hiring relates to its services as a freight broker by either expressly referring to them or by having a significant economic effect on those services.

While the services of a freight broker do not include the actual transportation of property, they are focused on arranging how others will transport the property; these services, therefore, fall within the scope of the FAAAA preemption . *Midwest Trading Grp., Inc. v. GlobalTranz Enters., Inc.*, No. 12 C 9313, 2015 WL 1043554, at *3 (N.D. Ill. Mar. 5, 2015). Central to C.H. Robinson's efforts to perform its services as a broker was the hiring of AI Trucking to transport the almonds. It is C.H. Robinson's alleged negligence in performing this duty that forms the basis of Georgia Nut's claim in Count I.

Common-law negligent hiring and negligent supervision claims do not expressly reference freight broker services; however, they do have a significant economic effect on those services. The purpose of the FAAAA preemption was to free interstate shipping from a patchwork of state laws and regulations and to replace those rules with "competitive market forces." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 371, 128 S. Ct. 989, 169 L. Ed. 2d 933 (2008) (describing Congress' overarching goal in passing the ADA "as helping ensure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality'"). Enforcing state negligence laws that would have a direct and substantial impact on the way in which freight brokers hire and oversee transportation companies would hinder this objective of the FAAAA. The FAAAA does not allow courts to impute state-law derived rights into transportation agreements, which would expand the bargained-for rights of the agreement. *See United Airlines, Inc.*, 219 F.3d at 609 ("[W]hen the state begins to change the parties' financial arrangements . . . it is supplying external norms, a process that the national government

has reserved to itself in the air transportation business."). Therefore, Georgia Nut's claim in Count I meets the second requirement of FAAAA preemption.

Georgia Nut argues that its claim in Count I survives preemption because it is similar to a contract claim. Courts have typically held that state contract claims are not preempted because enforcement of contract provisions under state law is consistent with Congress' purpose in passing the preemption provision of the FAAAA. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 230, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995) (The ADA is designed to promote reliance on competitive market forces, and those require an "effective means to enforce private agreements."). However, courts have also consistently held that claims that seek to expand a plaintiff's rights under their existing agreement are preempted. *See S.C. Johnson*, 697 F.3d at 558 (stating that theories of tortious interference with contract, breach of fiduciary duty, and fraudulent inducement to enter a contract are preempted because they are efforts to change the bargain that the parties had reached). Georgia Nut's negligent hiring and negligent supervision claim is just such a claim. Georgia Nut and C.H. Robinson entered into an oral agreement for Georgia Nut to pay C.H. Robinson to arrange for the shipment of almonds from California to Illinois. Whether the series of events that ultimately led to Georgia Nut receiving a shipment of unusable nuts breaches this agreement is a separate question from whether C.H. Robinson committed the torts of negligent supervision and negligent hiring. Allowing Georgia Nut to proceed on this tort theory as though it were a contract claim would go beyond enforcing the parties' bargain and would in effect modify or enhance the bargain in a manner the parties did not negotiate or agree. *See United Airlines, Inc.*, 219 F.3d at 609 (claims that enlarge or enhance the parties' agreement based on state laws that are external to the agreement are preempted). Georgia Nut argues that, "[t]he fact that one claim involves negligence law and the other

7

involves contract law is a difference without a distinction." Doc. 19 at 4. This is incorrect. The Supreme Court specifically noted that there is a key distinction between contract claims and negligence claims, which is dispositive for purposes of preemption. *Wolens*, 513 U.S. at 233 ("This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."). The Court finds no basis in the law to exempt contract-like negligence claims from the preemptive effect of the FAAAA. Therefore, the Court grants the motion to dismiss Count I.

**B.     Negligent Voluntary Undertaking – Insurance Claim Submission**

Georgia Nut also alleges that C.H. Robinson performed negligently in its voluntary undertaking of submitting a claim to the insurer. C.H. Robinson argues that this negligence claim is preempted by the FAAAA.

Because Count II seeks to enforce state common law, the first prong of the Seventh Circuit's test to determine whether a claim is preempted by the FAAAA is satisfied. *United Airlines, Inc.*, 219 F.3d at 607. Therefore this claim also turns on whether the services provided by C.H. Robinson in submitting a claim to the insurer relate to its services as a freight broker and if so, whether the negligent voluntary undertaking claim regulates those services by expressly referring to them or by having a significant economic effect on them.

The FAAAA preempts state-laws that relate to broker services provided with respect to the transportation of property. 49 U.S.C. § 14501(c)(1). "Transportation of property" is a key limitation on the breadth of the preemptive effect of the FAAAA. *Dan's City*, 569 U.S. at 261 (The phrase "with respect to the transportation of property " "'massively limits the scope of preemption' ordered by the FAAAA.") (quoting *City of Columbus v. Ours Garage & Wrecker*

*Serv., Inc.*, 536 U.S. 424, 449, 122 S. Ct. 2226, 153 L. Ed. 2d 430 (2002)). As noted above, Title 49 defines transportation "as 'services related to th[e] movement' of property, 'including arranging for, receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, packing, unpacking, and interchange of passengers and property.'" *Id.* at 261 (quoting 49 U.S.C. § 13102(23)(B)).

Processing of insurance claims after shipping is complete is not listed in Title 49 as a service related to the movement of property. However, the list of services under Title 49 is non-exhaustive. In support of its argument that claims handling is a service related to the transportation of property, C.H. Robinson cites to *Tirgan v. Roadway Package Systems, Inc.*, No. CIV. A. 94-2768(JEI), 1995 WL 21098 (D.N.J. Jan. 3, 1995), which held that claims for bad faith handling of damages claims by interstate shippers are preempted by the Carmack Amendment, 49 U.S.C. § 11707. C.H. Robinson asserts, without citation, that the preemptory effect of the Carmack Amendment is "narrower" than FAAAA, and that if claim processing is preempted by the Carmack Amendment it "stands to reason" that it is preempted under the FAAAA as well. Doc. 21 at 9.

The burden of establishing that federal law preempts a state law belongs to the party seeking to invoke preemption. *CSX Corp.*, 415 F.3d at 745. C.H. Robinson does not provide any evidence or citation showing that processing these claims on behalf of a client is central to role of a broker in the transportation of property. It is not clear how processing an insurance claim well after the completion of shipping relates to the act of arranging for the delivery of property. The fact that similar claims are preempted under the Carmack Amendment is perhaps informative, but C.H. Robinson has not developed this argument beyond the unsupported statements that the Carmack Amendment preemption is more narrow than the FAAAA and that it

9

is therefore reasonable that things preempted under the Carmack Amendment are preempted under the FAAAA.  This may be true, but C.H. Robinson has not shown it to be so, and the Court will not research and make C.H. Robinson's arguments for it.  *See Economy Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them.").  Because C.H. Robinson has failed to show that processing insurance claims is a service related to the movement of property, it has failed to meet its burden to demonstrate that federal law preempts the claim in Count II.  The Court, therefore, denies C.H. Robinson's motion to dismiss Count II.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part C.H. Robinson's motion to dismiss Count I and Count II of the first amended complaint.  The Court grants the motion with respect to Count I and denies the motion with respect to Count II.  The Court dismisses Count I without prejudice to Georgia Nut filing an amended complaint.

Dated: October 26, 2017

SARA L. ELLIS
United States District Judge