UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| GEORGIA NUT COMPANY, | ) |  |
| --- | --- | --- |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | No. 17 C 3018 |
| v. | ) |  |
|  | ) | Judge Sara L. Ellis |
| C.H. ROBINSON COMPANY d/b/a Robinson Fresh, and ALL INTERSTATE TRUCKING LLC, | ) ) ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Plaintiff Georgia Nut Company ("Georgia Nut") brings this action against Defendants C.H. Robinson Company ("C.H. Robinson") and All Interstate Trucking ("AI Trucking"), for their failure to properly deliver 42,000 pounds of almonds. After the Court dismissed Georgia Nut's claims against C.H. Robinson in its First Amended Complaint, Georgia Nut filed the Second Amended Complaint ("SAC") addressing the deficiencies with its negligent performance claim and replacing its negligent hiring and negligent supervision claim with a claim for breach of contract against C.H. Robinson. Defendant C.H. Robinson now moves to dismiss [36] the breach of contract claim arguing that it is nothing more than a restyled negligence claim and therefore preempted by the Federal Aviation Administration Authorization Act ("FAAAA"), 49 U.S.C. § 14501, because it seeks relief under state laws that have an effect on the prices, routes, or services of freight brokers covered by the FAAAA. C.H. Robinson also argues that even if it is a genuine contract claim, the alleged contract does not include any provision for which C.H. Robinson could be liable for damages to Georgia Nut's shipment and that the FAAAA preempts any implied terms that Georgia Nut alleges are part of the contract . Because the FAAAA does

not preempt voluntary contractual arrangements between private parties, and it also does not preempt the type of implied contract terms Georgia Nut alleges in the SAC, Georgia Nut's contract claim can stand. Additionally, because Georgia Nut sufficiently alleges the existence of a contract with both express and implied terms that C.H. Robinson breached, and because Georgia Nut alleges that it suffered damages as a result of the breach, the Court denies the motion to dismiss Count III.

# BACKGROUND[1]

Between June 14 and June 17, 2016, Juan Juanez of Georgia Nut negotiated the terms of an agreement with two employees of C.H. Robinson, pursuant to which C.H. Robinson would broker a shipment of almonds from a Del Rio Nut facility in Livingston, California, to a Georgia Nut facility in Niles, Illinois. The parties conducted the negotiation of this agreement via email and over the phone during these four days, and on June 17, Edward Johnson of C.H. Robinson emailed Juanez to accept Georgia Nut's offer to enter into a freight brokerage services contract (the "Contract").[2]

Georgia Nut alleges that one of the terms of the Contract required C.H. Robinson to "hire a trucking company that was reliable, was experienced, and would pick-up the Almonds in Livingston, California on June 17, 2016 and deliver the Almonds directly to Niles, Illinois by 8 a.m. on June 20, 2016." Doc. 31 ¶ 77. Georgia Nut also alleges that based on its need for

---

[1] The facts in the background section are taken from Georgia Nut's SAC and are presumed true for the purpose of resolving the motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

[2] C.H. Robinson attaches an email to its Motion to Dismiss that it purports to be this email. C.H. Robinson argues that the Court can consider the text of this email at the motion to dismiss stage because Georgia Nut identifies the email as the "Contract" in the SAC. This, however, misstates the SAC. In the SAC, Georgia Nut identifies the email as the acceptance of the Contract, not the Contract itself. Furthermore, the email as provided by C.H. Robinson lacks sufficient context for the Court to make use of it. At this stage the Court therefore accepts as true Georgia Nut's interpretation of the email as the acceptance of the Contract negotiated between the two parties over the preceding days.

expedited delivery, about which C.H. Robinson was aware, and based on industry custom and the prior relationship of the parties, C.H. Robinson additionally was required to select a shipper that was qualified, experienced, reputable, and reliable. In consideration of its services pursuant to the Contract, Georgia Nut paid C.H. Robinson $3,800.

C.H. Robinson hired motor carrier AI Trucking to deliver the almonds from Livingston to Niles. As agreed, AI Trucking picked up the almonds from the facility in Livingston on June 17. Before AI Trucking departed with the almonds, Del Rio Nut placed a tamper-proof band (the "Band") on the cargo door of the truck. The Band had a unique load-identifying seal number, which matched the number on the bill of lading for the shipment.

After departing the Del Rio Nut facility, AI Trucking did not proceed directly to Niles, but instead routed the shipment through the state of Georgia. Ultimately, AI Trucking delivered the almonds to the Niles facility on the evening of June 21, 2016. However, at the time of the delivery, the Band on the truck no longer matched the number on the bill of lading, indicating that someone had tampered with the almonds and rendered them no longer usable for human consumption. Based on the issue with the Band, Georgia Nut rejected the shipment and took a loss on the entire $162,000 value of the almonds.

Georgia Nut alleges that C.H. Robinson did not conduct due diligence on AI Trucking before hiring it to ship the almonds. C.H. Robinson did not investigate whether AI Trucking was an experienced, reputable, and reliable trucking company. AI Trucking was established in July of 2015 and was administratively dissolved on December 7, 2016. Public Federal Motor Carrier Safety Administration records show that AI Trucking had one driver and drove one mile in 2015. To date, AI Trucking has refused to cooperate with its insurance company regarding the loss of the shipment of almonds.

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**ANALYSIS**

In its First Amended Complaint, Georgia Nut brought a negligence claim against C.H. Robinson. The Court held that the FAAAA preempted this claim. C.H. Robinson argues that because the Court previously dismissed Georgia Nut's negligence claim as preempted by the FAAAA, the Court should now dismiss Georgia Nut's breach of contract claim, which is based on related conduct, for the same reason. C.H. Robinson asserts that because the conduct underlying the preempted negligence claim and the current breach of contract claim is similar, the FAAAA likewise preempts the breach of contract claim. C.H. Robinson also argues that even if the Court continues to construe Count III as a breach of contract claim, it is still preempted because it is premised on breaches of implied terms derived from state law. Finally,

C.H. Robinson argues that Georgia Nut has not alleged the existence of any contract term that if breached would entitle it to recover damages from C.H. Robinson.

The FAAAA generally does not preempt contract claims. *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 228–29, 115 S. Ct. 817, 130 L. Ed. 2d 715 (1995). C.H. Robinson, therefore, wants the Court to find that Georgia Nut's breach of contract claim is nothing but a repackaged version of its previously dismissed state law negligence claim and thus, subject to preemption. The fact that Georgia Nut previously brought a negligence claim based on much of the same conduct underlying its present breach of contract claim does not mean that the Court must construe this breach of contract claim as a negligence claim. In fact, it means very little at all. Georgia Nut, as plaintiff, is the master of its complaint and may choose to assert whatever theories of liability it chooses. *Bagdon v. Bridgestone/Firestone, Inc.*, 916 F.2d 379, 381 (7th Cir. 1990). The Supreme Court rejected a similar attempt to convert a non-preempted contract claim into a preempted state law claim based on similar conduct in *Wolens.* The Court rejected this argument because the breach of contract claim and the state law negligence claim required the plaintiff to prove different elements. *Wolens*, 513 U.S. at 233. The same reasoning applies here. To succeed on its contract claim, Georgia Nut must prove the existence of an agreement and a breach of the terms of that agreement, whereas its previously dismissed negligence claim did not require Georgia Nut to prove that it had an agreement with C.H. Robinson related to how it would hire and supervise AI Trucking. It sought to impose a duty to do so irrespective of the existence of an agreement. This distinction is what makes the contract claim a non-preempted self-imposed undertaking while the negligence claim is a preempted state-imposed duty. Therefore, the Court declines to construe the breach of contract claim as a negligence claim, and the FAAAA does not preempt Count III on this basis.

C.H. Robinson next argues that even as a breach of contract claim, Count III fails because the alleged contract does not contain any provision requiring C.H. Robinson to pay for any damages to Georgia Nut's shipment caused by the motor carrier, AI Trucking. In the SAC, Georgia Nut alleges that following oral and written negotiations, C.H. Robinson agreed to act as a broker for shipping services for Georgia Nut in exchange for $3,800. Georgia Nut alleges that C.H. Robinson breached this contract by failing to provide "adequate and proper freight brokerage services" with respect to the shipment. Doc. 31 ¶ 83. This breach specifically consisted of hiring AI Trucking to serve as the motor carrier for the shipment of almonds without investigating whether AI Trucking was qualified to handle the shipment. As a result of C.H. Robinson's failure to properly vet AI Trucking, Georgia Nut alleges that it suffered a loss of the entire shipment of almonds, valued at $162,000, as well as other consequential damages that were reasonably foreseeable at the time C.H. Robinson entered into the broker agreement with Georgia Nut.

As C.H. Robinson correctly points out, Georgia Nut does not allege the existence of an express contract provision obligating C.H. Robinson to pay for damages to shipments resulting from its brokerage services. But this is a strawman; Georgia Nut is not seeking damages based on such a theory. Georgia Nut instead proceeds on a consequential damages theory, specifically that the loss of the almond shipment is a reasonably foreseeable consequence of C.H. Robinson's failure to perform proper vetting of the motor carrier as required by the agreement. Under Illinois law, the parties need not to have contemplated the specific damages in question to pursue consequential damages in a breach of contract action, the parties need only to be able to reasonably foresee the damages at the time of contracting. *Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 59 F. Supp. 3d 865, 882 (N.D. Ill. 2014) (citing *Linc Equip. Servs., Inc. v.*

*Signal Med. Servs., Inc.*, 319 F.3d 288, 289 (7th Cir. 2003)). Georgia Nut's claim does not require there to be an express term obligating C.H. Robinson to pay for damages to the shipment caused by the motor carrier, these damages need to only to be a reasonably foreseeable result of a breach of one of C.H. Robinson's other duties under the contract. Thus, Georgia Nut has pleaded damages adequately to survive a motion to dismiss.[3]

Finally, C.H. Robinson argues that to the extent Georgia Nut has pleaded a breach of contract claim, it is based upon various implied terms derived from industry custom and their course of dealings, and that the FAAAA preempts such implied terms. C.H. Robinson argues that these implied terms seek to improperly expand the parties' agreement beyond the original bargain, which is not allowed under the FAAAA. This argument fails for two reasons.

First, the FAAAA only preempts implied terms provided by state law if the implied terms are mandatory and the parties are not free to contract around them. *Ginsberg*, 134 S. Ct. at 1433 (implied terms provided by state law are not preempted if the state allows parties to contract out of them). Therefore, there is no automatic preemption of terms to a contract not expressly stated in the agreement.

Second, the implied terms, as alleged, are not an attempt to expand the parties' agreement beyond the original bargain because Georgia Nut alleges that these terms were part of the original bargain. Just like with other terms of a contract, there must be a meeting of the minds about implied terms at the time the parties form the agreement. *Landale Signs & Neon, Ltd. v. Runnion Equip. Co.*, No. 16-CV-7619, 2016 WL 7409916, at *7 (N.D. Ill. Dec. 22, 2016) ("A

---

[3] C.H. Robinson has not argued that consequential damages are preempted by the FAAAA, but the Court finds it unlikely that they are. Much like implied contract terms, discussed below, consequential damages are not state imposed obligations, but simply a form of damages Illinois allows plaintiffs to recover in contract cases. The parties easily could have disclaimed consequential damages in their agreement; the fact that they did not do so does not make them imposed by the state. *See Nw., Inc. v. Ginsberg*, 134 S. Ct. 1422, 1433, 188 L. Ed. 2d 538 (2014)

'meeting of the minds' is a fundamental prerequisite to a claim for breach of implied contract."). Georgia Nut alleges that the implied terms formed the basis of the agreement and the parties implicitly agreed to them through their prior course of dealing and industry practice. Under Illinois law, a contract may derive implied terms from the parties' prior course of dealings and industry practice where the contract is otherwise silent. *See Capitol Converting Equip., Inc. v. LEP Transp., Inc.*, 965 F.2d 391, 396 (7th Cir. 1992) (course of dealing may supplement an oral contract and may become part of an agreement through tacit recognition); *see also Am. Bar Endowment v. Mut. of Omaha Ins. Co.*, No. 00C1176, 2002 WL 480960, at *6 (N.D. Ill. Mar. 21, 2002) (industry custom and practice may provide terms of an agreement where the agreement is otherwise silent and there is no integration clause). It may well end up being true that there was no meeting of the minds about the implied terms, and this will ultimately be Georgia Nut's burden to prove, but Georgia Nut has alleged that there was an implied agreement at the time of contracting and this is enough to survive a motion to dismiss. Therefore, the Court denies C.H. Robinson's motion to dismiss Count III.

## CONCLUSION

For the foregoing reasons, the Court denies C.H. Robinson's motion [36] to dismiss Count III of the SAC.

Dated: April 30, 2018

SARA L. ELLIS
United States District Judge